**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ARLENE WYANT, CHERYL RUTKOWSKI, DEXTER COBB, and JOSEFINA DARNALL individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>   v.<br><br>DUDE PRODUCTS, INC.,<br><br>            Defendant. | ) ) ) ) ) ) ) ) ) ) )<br><br>Case No.: 1:21-cv-00682<br><br>Hon. Sharon Johnson Coleman |

**SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Arlene Wyant, Cheryl Rutkowski, Dexter Cobb, and Josefina Darnall ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant DUDE Products, Inc. ("Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

**NATURE OF THE ACTION**

1.  This is a putative class action lawsuit on behalf of purchasers of DUDE Wipes-brand flushable wipe products (collectively, "DUDE Wipes"). Defendant markets and sells DUDE Wipes as "flushable" wipe products. In fact, DUDE Wipes are not flushable, in that they do not break apart or disperse in a reasonable period of time after flushing, resulting in clogs or other sewage damage.

2.  Flushable wipes are a personal hygiene product that serve as an alternative to toilet paper. Flushable wipes are generally packaged as small to medium-sized moistened pieces of cloth, which come pre-cut into rectangles, folded, and wrapped for convenience. The

flushable wipe industry is growing at twice the rate of all other restroom wipe products. For example, in 2018, flushable wipes accounted for $2.1 billion in total sales.[1]

3.      Consumers understand that "flushable" is commonly defined and understood to mean suitable for disposal by flushing down a toilet. As a result, reasonable consumers expect that "flushable wipe" products will disperse in a short amount of time after flushing and therefore will not clog or cause other operational problems in household sewage lines, septic systems, and other standard wastewater equipment. To be suitable for flushing, any "flushable" product must be able to quickly disintegrate into small pieces such that it can pass through sewer systems without issue.

4.      Contrary to Defendant's representations, DUDE Wipes are not, in fact, flushable. DUDE Wipes do not break apart or disperse after flushing.

5.      As such, Defendant engaged in widespread false and deceptive advertising on its DUDE Wipes by claiming DUDE Wipes are "flushable" (the "Flushability Claims"). Every package of DUDE Wipes prominently claims that the product consists of "Flushable Wipes," and the product packaging even includes a picture of a cartoon toilet with the text "King of the Throne."

6.      Plaintiffs and Class Members purchased defective flushable wipes designed, marketed manufactured, distributed, and sold by Defendant as "flushable." Further, Plaintiffs and Class Members relied to their detriment on Defendant's representation that DUDE Wipes are "flushable." Plaintiffs and Class Members would not have paid to purchase Defendant's DUDE Wipes – or would not have paid as much as they did to purchase them – had they known that

---

[1] https://www.smithers.com/services/market-reports/nonwovens/the-future-of-flushable-wipes-to-2023 (last accessed Jan. 26, 2021).

they are not, in fact, "flushable." Plaintiffs and Class Members thus suffered monetary damages as a result of Defendant's deceptive and false representations.

7.      The mislabeling of the DUDE Wipes renders the product completely worthless. There is no value to consumers for purportedly "flushable" wipes that are not actually flushable. Nevertheless, DUDE Wipes are labeled and sold as an alternative to toilet paper, and they command a significant price premium over non-flushable wipes and traditional toilet paper. Thus, Plaintiffs and class members have thus been hit with a costly double-whammy: a premium purchase price for a worthless product.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiffs, as well as most members of the proposed class, are citizens of states different from Defendant.

9.      This Court has personal jurisdiction over Defendant because it conducts substantial business within Illinois, including the manufacturing, sale, marketing, and advertising of DUDE Wipes. Defendant also maintains its corporate headquarters and principal place of business in this judicial district. Furthermore, a substantial portion of the events giving rise to Plaintiff Darnall's claims occurred in this State, including Plaintiff Darnall's purchase of DUDE Wipes.

10.      Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is headquartered in this District.

## **PARTIES**

11.     Plaintiff Arlene Wyant is a citizen of New York, residing in Clinton Corners, New York.  On January 10, 2021, Plaintiff Wyant purchased DUDE Wipes for her personal use for approximately $3.89 from Hannaford Brothers Company in Kingston, New York.  Prior to her purchase of DUDE Wipes, Plaintiff Wyant reviewed the product's labeling and packaging and saw that the DUDE Wipes were purportedly "flushable" on the front panel.  Plaintiff Wyant relied on that representation to choose her flushable wipes over comparable products.  Plaintiff Wyant saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her DUDE Wipes were "flushable."  Plaintiff did not realize the side or back panel of the DUDE Wipes contained information inconsistent with this representation.  Plaintiff Wyant relied on the representations and warranties that her products were "flushable" in deciding to purchase her DUDE Wipes.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased DUDE Wipes on the same terms had she known these representations were not true.  However, Plaintiff Wyant remains interested in purchasing a flushable wipes and would consider DUDE Wipes in the future if Defendant ensured the products were actually flushable. In making her purchase, Plaintiff Wyant paid a substantial price premium due to the false and misleading Flushability Claims.  However, Plaintiff Wyant did not receive the benefit of her bargain because her DUDE Wipes, in fact, were not flushable.  Plaintiff Wyant also understood that in making the sale, her retailer was acting with the knowledge and approval of the Defendant and/or as the agent of the Defendant.  Plaintiff Wyant further understood that the purchase came with Defendant's representation and warranties that her DUDE Wipes were "flushable."

12.     Plaintiff Wyant used her DUDE Wipes as directed by the product's packaging. After use, Plaintiff experienced plumbing issues, including the clogging of her home plumbing.

4

13.     Plaintiff Cheryl Rutkowski is a citizen of New York, residing in Hamburg, New York.  On August 24, 2022, Plaintiff Rutkowski purchased DUDE Wipes for her personal use for approximately $2.98 from Amazon.com.  Prior to her purchase of DUDE Wipes, Plaintiff Rutkowski reviewed the product's labeling and packaging and saw that the DUDE Wipes were purportedly "flushable" on the front panel.  Plaintiff Rutkowski relied on that representation to choose her flushable wipes over comparable products.  Plaintiff Rutkowski saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her DUDE Wipes were "flushable."  Plaintiff did not realize the side or back panel of the DUDE Wipes contained information inconsistent with this representation.  Plaintiff Rutkowski relied on the representations and warranties that her products were "flushable" in deciding to purchase her DUDE Wipes.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased DUDE Wipes on the same terms had she known these representations were not true.  However, Plaintiff Rutkowski remains interested in purchasing a flushable wipes and would consider DUDE Wipes in the future if Defendant ensured the products were actually flushable. In making her purchase, Plaintiff Rutkowski paid a substantial price premium due to the false and misleading Flushability Claims. However, Plaintiff Rutkowski did not receive the benefit of her bargain because her DUDE Wipes, in fact, were not flushable.  Plaintiff Rutkowski also understood that in making the sale, her retailer was acting with the knowledge and approval of the Defendant and/or as the agent of the Defendant.  Plaintiff Rutkowski further understood that the purchase came with Defendant's representation and warranties that her DUDE Wipes were "flushable."

14.     Plaintiff Rutkowski used her DUDE Wipes as directed by the product's packaging. After use, Plaintiff experienced plumbing issues, including the clogging of her home plumbing.

15.     Plaintiff Dexter Cobb is a citizen of California, residing in Los Angeles,
California.  In October 2020, Plaintiff Cobb purchased DUDE Wipes for his personal use for
approximately $3.89 from Target in Los Angeles, California.  Prior to his purchase of DUDE
Wipes, Plaintiff Cobb reviewed the product's labeling and packaging and saw that the DUDE
Wipes were purportedly "flushable" on the front panel.  Plaintiff Cobb relied on that
representation to choose his flushable wipes over comparable products.  Plaintiff Cobb saw these
representations prior to, and at the time of purchase, and understood them as representations and
warranties that his DUDE Wipes were "flushable."  Plaintiff did not realize the side or back
panel of the DUDE Wipes contained information inconsistent with this representation.  Plaintiff
Cobb relied on the representations and warranties that her products were "flushable" in deciding
to purchase his DUDE Wipes.  Accordingly, these representations and warranties were part of
the basis of the bargain, in that he would not have purchased DUDE Wipes on the same terms
had he known these representations were not true.  However, Plaintiff Cobb remains interested in
purchasing a flushable wipes and would consider DUDE Wipes in the future if Defendant
ensured the products were actually flushable.  In making his purchase, Plaintiff Cobb paid a
substantial price premium due to the false and misleading Flushability Claims.  However,
Plaintiff Cobb did not receive the benefit of his bargain because his DUDE Wipes, in fact, were
not flushable.  Plaintiff Cobb also understood that in making the sale, his retailer was acting with
the knowledge and approval of the Defendant and/or as the agent of the Defendant.  Plaintiff
Cobb further understood that the purchase came with Defendant's representation and warranties
that his DUDE Wipes were "flushable."

16.     Plaintiff Josefina Darnall is a citizen of Illinois, residing in Alsip, Illinois.  On
December 1, 2021, Plaintiff Darnall purchased DUDE Wipes for her personal use for
approximately $3.89 from Jewel Osco in Alsip, Illinois.  Prior to her purchase of DUDE Wipes,

Plaintiff Darnall reviewed the product's labeling and packaging and saw that the DUDE Wipes were purportedly "flushable" on the front panel. Plaintiff Darnall relied on that representation to choose her flushable wipes over comparable products. Plaintiff Darnall saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her DUDE Wipes were "flushable." Plaintiff did not realize the side or back panel of the DUDE Wipes contained information inconsistent with this representation. Plaintiff Darnall relied on the representations and warranties that her products were "flushable" in deciding to purchase her DUDE Wipes. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased DUDE Wipes on the same terms had she known these representations were not true. However, Plaintiff Darnall remains interested in purchasing a flushable wipes and would consider DUDE Wipes in the future if Defendant ensured the products were actually flushable. In making her purchase, Plaintiff Darnall paid a substantial price premium due to the false and misleading Flushability Claims. However, Plaintiff Darnall did not receive the benefit of her bargain because her DUDE Wipes, in fact, were not flushable. Plaintiff Darnall also understood that in making the sale, her retailer was acting with the knowledge and approval of the Defendant and/or as the agent of the Defendant. Plaintiff Darnall further understood that the purchase came with Defendant's representation and warranties that her DUDE Wipes were "flushable."

17.     Plaintiff Darnall used her DUDE Wipes as directed by the product's packaging. After use, Plaintiff experienced plumbing issues, including the clogging of her home plumbing.

18.     Defendant DUDE Products, Inc. is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Chicago, Illinois. DUDE Products, Inc. manufactures, sells, and/or distributes DUDE-brand products, and is responsible for the advertising, marketing, trade dress, and packaging of DUDE Wipes. DUDE Products,

Inc. manufactured, marketed, and sold DUDE Wipes during the class period.  The planning and execution of the advertising, marketing, labeling, packaging, testing, and corporate operations concerning DUDE Wipes and the Flushability Claims was primarily carried out at DUDE Products, Inc.'s headquarters and facilities within Illinois.  The policies, practices, acts and omissions giving rise to this action were developed in, and emanated from, DUDE Product Inc.'s headquarters in Chicago, Illinois.

## FACTUAL ALLEGATIONS

**A.** **Defendant's Misrepresentations Regarding The DUDE Wipe Products**

19.     DUDE Wipes are sold in "Fragrance Free," "Mint Chill," and "Singles" packaging.  On the front of the DUDE Wipes packaging, Defendant uniformly represents that the DUDE Wipes are "flushable wipes" in bold, approximately 72 pt font:







20.     Similarly, each package of DUDE Wipes features the following image signaling that the products are suitable for flushing:



21.     On the side panel of the DUDE Wipes, Defendant purportedly includes a small print disclaimer in 12 pt font or smaller:





22.     No reasonable consumer would expect that small print language on the side or back panels of the DUDE Wipe products would contain language inconsistent with the representation that DUDE Wipes are "flushable."  Nor would a reasonable consumer expect that

a "flushable" wipe would not break down in a timely manner under ordinary circumstances, such as when placed in water.

23.     On its website, Defendant informs consumers that they can "send toilet paper back to the Stone Age with DUDE Wipes:"

> Send toilet paper back to the Stone Age with DUDE Wipes. Made with 99% water and plant based ingredients, including aloe vera and vitamin-e. DUDE Wipes are gentle on your skin and will leave you feeling refreshed and ready for whatever the day brings.

24.     Similarly, Defendant claims:

> **THE FUTURE IS NOW**
>
> We hated using toilet paper so we created the flushable DUDE Wipes, wet wipes specifically for cleaning your butt and dude regions. Our at home packs with easy pop up dispensing make the need for toilet paper a thing of the past, DUDE.

25.     Defendant's advertising and marketing of DUDE Wipes is false and misleading and omits material information. DUDE Wipes prominently advertise on the front label that they are "flushable." Consumers reasonably expect that DUDE Wipes will, in fact, be "flushable" and therefore are safe for home use. Nowhere on the DUDE Wipes packaging does Defendant inform consumers that the DUDE Wipes are not suitable for flushing. Defendant's misrepresentations and/or omissions violate consumers' reasonable expectations and, as alleged herein, California's and New York's consumer protection statutes.

**B.      Defendant's DUDE Wipes Are Not "Flushable"**

26.     Historically, toilet paper has been considered the benchmark for flushability because it begins to break down upon contact with water. Toilet paper will disintegrate into small pieces suitable for passing through sewer and septic systems without causing clogs. In

contrast, flushable wipes – like DUDE Wipes – do not perform as advertised or marketed. Flushable wipes do not disintegrate effectively and can commingle to cause clogs and other sewage line issues. As stated by industry officials, "[f]lushable wipes are not truly flushable …. They might go down the drain, but they do not breakup like regular toilet paper."[2]

27. A product labeled flushable must break apart or disperse in a reasonable period of time such that it can clear sewage systems without causing clogs or otherwise negatively impacting sewage lines. However, Defendant's wipes do not break apart or disperse in a reasonable period of time, resulting in clogs or other sewage damage.

28. Indeed, studies highlight the nature of the mislabeling of flushable wipe products like DUDE Wipes. For example, in *Defining 'Flushabiliy' for Sewer Use* by Anum Khan et al. ("*Defining 'Flushability*'") researchers at Ryerson University in Toronto tested 101 consumer products, include 23 wipes labeled as "flushable" and found that "most products tested for drainline clearance did not clear the drainline in a single flush, sometimes requiring up to six 6-L flushes …. Therefore, a consumer product is potentially incompatible with toilets and plumbing systems."[3] Further, while "all bathroom tissue tested fully disintegrated before the end of the 30-minute agitation period … none of the products labelled 'flushable' disintegrated within the allotted time to an extent required to pass the test."[4] As a result, they determined "it is evident that none of the products other than bathroom tissue are 'flushable.'"[5]

29. Further, the National Association of Clean Water Agencies ("NACWA")

---

[2] New York Times, *Americans Coping with the Coronavirus are Clogging Toilets* (Mar. 21, 2020), available at: https://www.nytimes.com/2020/03/21/us/flushable-wipes-clog.html (last accessed Jan. 21, 2021).
[3] Defining 'Flushability' for Sewer Use, Ryerson University, Final Report by Anum Kan et al. (Mar. 31, 2019), available at https://www.ryerson.ca/content/dam/water/Research/FinalReport-FlushablesApril1.pdf (last accessed Jan. 26, 2021).

[4] *Id.*

[5] *Id.*

conducted a nationwide study addressing the cost of wipes in 2019, working closely with other national and state organizations.[6] The study was designed to provide conservative estimates of the likely cost of wipes in the United States at both the national and state levels, and is based on data collected from 25 utilities in 19 states, broadly representative of the population of utilities in the United States. Ultimately, NACWA estimates that wipes result in about $441 million per year in additional operating costs in the collection systems of clean water utilities in the U.S. and impose over $30,000 in additional collection system operating costs on the average utility per year. In some states, such as California and New Jersey, with relatively few utilities and high flows, the average utility pays significantly more.

30. Numerous independent tests demonstrate and confirm that wipes labeled and sold as being "flushable" will not break down or dissolve in any sewer system.

31. Consumer Reports performed independent disintegration tests on flushable wipes that simulated toilet flushing conditions. A video clip depicting the tests shows that toilet paper broke down in about eight seconds, but after ten minutes, the flushable wipes did not break down, and still did not break down after being placed in a Kitchen Aid mixer for another ten minutes.[7] The video concludes: "Our advice: If you use these products, don't flush them down the toilet."[8]

32. In 2016, the City of Vancouver, Washington conducted a series of "in-sewer"

---

[6] NACWA, The Cost of Wipes On America's Clean Water Utilities, https://www.nacwa.org/docs/default-source/resources---public/govaff-3-cost_of_wipes-1.pdf?sfvrsn=b535fe61_2 (last accessed Jan. 26, 2021).

[7] Consumer Reports, Think twice about flushing wet wipes (Dec. 27, 2013), available at: https://www.consumerreports.org/cro/news/2013/12/think-twice-about-flushing-wetwipes/index.htm (last accessed Jan. 26, 2021).

[8] Eyewitness News, Consumer Reports: Flushable Wipes, available at: https://abc7ny.com/consumer-reports-plumbing-flushable-wipes-eyewitness-news/29868/ (last accessed Jan. 26, 2021).

tests of allegedly "flushable" wipes, dropping them into a manhole and observing their conditions at a downstream collection point. The study concluded that nearly all flushable wipes currently on the market in the United States "cannot be considered safe to flush since they travel through real sewers intact, with no dispersion."[9] The test found flushable wipes completely or nearly completely intact.[10]

33.     In a video posted by the Water Environment Federation, pretreatment technician Tracy Stevens performed a "spin test" on multiple household products, including: one ply tissue, three ply tissue, regular toilet paper, plush toilet paper and multiple brands of flushable wipes.[11] The products were placed in beakers filled with water and a spinning blade to simulate flushing, and only toilet paper dispersed almost immediately.[12] After a few minutes, the flushable wipes were still completely intact, with some cloudiness in the beaker that was attributed to lotion on the wipe.[13] According to Stevens:

> If you define flushable as yes it will go down the toilet, then [ ] everything
> [tested] here is flushable. If you define it as whether it will make it to the
> treatment plant, then [ ] all of these things could eventually make it to the
> treatment plant and maybe one time out of ten, or one time out of twenty
> they don't, and with hundreds of thousands of people out there flushing
> these things down one out of ten, one out of a hundred, one out of a
> thousand, they are going to cause trouble.[14]

---

[9] *See* Testimony of Cynthia A. Finley, Ph.D., Summary of Field Dispersion Tests, Attachment B at 9 (Mar. 15, 2017), available at: https://www.nacwa.org/docs/default-source/resources---public/2017- 03-15mdemtest.pdf?sfvrsn=4 (last visited Jan. 26, 2021).

[10] *Id.* at 11-12.

[11] Water Environment Federation, Will it Flush? Video, YOUTUBE (Jan. 4, 2012), available at: http://www.youtube.com/watch?v=SLTVqkXVvNk&feature=youtu.be (last visited Jan. 26, 2021)

[12] *See id.*

[13] *See id.*

[14] *See id.*

34. CBS4 Miami, after investigating damage caused by flushable wipes, hired I-P-S testing, the only independent testing facility in the country, to conduct a slosh box test. I-P-S put toilet paper, flushable wipes and non-flushable wipes through the same slosh box test. After one hour, the toilet paper was barely visible, but the flushable wipes and non-flushable wipes were fully intact. After two hours, the toilet paper had dispersed completely, the flushable wipes had "shredded some, but visible chunks still remain[ed]" and the non-flushable wipes had not changed at all. After three hours, there was "a trace amount" left of the flushable wipes and the non-flushable wipes remained "pretty intact."[15]

35. Numerous complaints regarding the flushability of DUDE Wipes are available online, below is a small sampling of complaints:

For example on March 24, 2020, on amazon.com one user stated:

> ALERT!!!!!!!!
> This product is not flushable!!! Don't fall for what it says on packaging.
> This has caused a major back up in our sewer pipe and a ton of money.
> Have not flushed one in over a month and they are exploding out of sewer
> pipes not disintegrated in the least. It's sad that they would even list them
> as flushable

On March 19, 2020, another user claimed:

> Not Flushable
> It states on the package these are flushable. They should not be flushed.
> If you put on in a bowl of water, let it set a few minutes then stir it around.
> It does not fall apart as it should in the sewer line. In fact, you can't hardly
> pull it apart. These will clog the sewer line.

36. These problems are, or should be, known to Defendant. Yet, Defendant continues to market and sell DUDE Wipes as "flushable" wipes, and does so at a higher cost than

---

[15] CBS 4 Miami, The Trouble With Wipes In Your Pipes (Feb. 4, 2014), available at: http://miami.cbslocal.com/2014/02/04/the-trouble-with-wipes-in-your-pipes/ (last visited Jan. 27, 2021).

comparable non-flushable wipes.  For example "non-flushable" wet wipes from Up & Up cost approximately $0.016 per wipe while DUDE Wipes cost approximately $0.81 per wipe, respectively.  Thus, Plaintiffs and members of the Class and Subclass paid nearly *five times* as much for DUDE Wipes flushable wipes due to the Flushability Claims.

37.     Had Defendant not made the false, misleading, and deceptive representations and/or omissions alleged herein, Plaintiffs and Class Members would not have purchased DUDE Wipes or would not have paid as much as they did for such products.  Thus, each Plaintiff and Class Member suffered an injury in fact and lost money or property as result of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

38.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

39.     Plaintiffs seek to represent a class defined as all people who purchased any DUDE Wipes product that falsely advertised that the product was purportedly "flushable" during the applicable statute of limitations (the "Class").  Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

40.     Plaintiffs also seeks to represent a subclass consisting of Class Members who reside California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington (the "Consumer Fraud Multi-State Subclass").

41.     Plaintiffs Arlene Wyant and Cheryl Rutkowski also seek to represent a subclass consisting of Class Members who reside in New York (the "New York Subclass").

42.     Plaintiff Dexter Cobb also seeks to represent a subclass consisting of Class Members who reside in California (the "California Subclass").

43.     Plaintiff Josefina Darnall also seeks to represent a subclass consisting of Class Members who reside in Illinois (the "Illinois Subclass").

44.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Subclasses may be expanded or narrowed by amendment or amended complaint.

45.     **Numerosity.**  The Class and Subclass Members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are hundreds of thousands of Members in the Class and in each Subclass.  Although the precise number of Class and Subclass Members is unknown to Plaintiffs, it is known by Defendant and may be determined through discovery.

46.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all Members of the Class and Subclasses and predominate over any questions affecting only individual Class or Subclass members.  These common legal and factual questions include, but are not limited to, the following:

> (a)     Whether Defendant made false and/or misleading statements to the consuming public concerning the "flushability" of DUDE Wipes;
>
> (b)     Whether Defendant omitted material information to the consuming public concerning the "flushability" of DUDE Wipes;

(c)      Whether Defendant's labeling and packaging for the DUDE Wipes is misleading and/or deceptive;

(d)      Whether Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising and sale of DUDE Wipes;

(e)      Whether Defendant's representations concerning the DUDE Wipes were likely to deceive a reasonable consumer;

(f)      Whether Defendant's omissions concerning DUDE Wipes were likely to deceive a reasonable consumer;

(g)      Whether Defendant represented to consumers that DUDE Wipes have characteristics, benefits, or qualities that they do not have;

(h)      Whether Defendant advertised the DUDE Wipes with the intent to sell them not as advertised;

(i)      Whether Defendant falsely advertised DUDE Wipes;

(j)      Whether Defendant made and breached express and/or implied warranties to Plaintiffs and Class and Subclass Members about DUDE Wipes;

(k)      Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiffs and Class and Subclass Members; and

(l)      Whether Plaintiffs and Class and Subclass Members are entitled to damages.

47.     **Typicality.**  Plaintiffs' claims are typical of the claims of the other Members of the Class and Subclasses in that, among other things, all Class and Subclass Members were deceived (or reasonably likely to be deceived) in the same way by Defendant's false and misleading advertising claims about the "flushability" of DUDE wipes.  All Class and Subclass Members were comparably injured by Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiffs.

48.     **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the interests of the Members of the Class and Subclasses.  Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Subclasses.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclasses.

49.     **Superiority.**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for Class or Subclass Members to obtain effective redress on an individual basis for the wrongs committed against them.  Even if Class or Subclass Members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  It would also increase the delay and expense to all parties and the court system from the issues raised by this action.  The class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

50.     In the alternative, the Class and Subclasses may also be certified because:

(a)     the prosecution of separate actions by individual Class and Subclass
Members would create a risk of inconsistent or varying adjudications with
respect to individual Class or Subclass Members that would establish
incompatible standards of conduct for Defendant;

(b)     the prosecution of separate actions by individual Class and Subclass
Members would create a risk of adjudications with respect to them that
would, as a practical matter, be dispositive of the interests of other Class
and Subclass Members not parties to the adjudications, or substantially
impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to
the Class and to each Subclass as a whole, thereby making appropriate
final declaratory and/or injunctive relief with respect to the Members of
the Class and to the Members of each Subclass as a whole.

**<u>COUNT I</u>**
**Violation Of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf Of The California Subclass)**

51.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations
contained in all preceding paragraphs of this complaint.

52.     Plaintiff Dexter Cobb brings this claim individually and on behalf of the Members
of the proposed California Subclass against Defendant.

53.     Defendant violated California's Consumers Legal Remedies Act (the "CLRA")
by engaging in the following unfair and deceptive business practices, as alleged above and
herein:

(a)     Defendant violated Cal. Civ. Code § 1770(a)(5) by representing that
DUDE Wipes have characteristics that they do not have.

19

(b)    Defendant violated Cal. Civ. Code § 1770(a)(9) by advertising DUDE

Wipes with the intent not to sell them as advertised.

54.    The CLRA was enacted to protect consumers against such practices.  The CLRA

applies to Defendant's conduct because the statute covers all sales of goods to consumers.

55.    Plaintiff Cobb and other Members of the California Subclass are "consumers"

within the meaning of Cal. Civ. Code § 1761(d).  By purchasing Defendant's DUDE Wipes,

Plaintiff Cobb and other Members of the California Subclass engaged in "transactions" within

the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

56.    Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c).

Defendant's DUDE Wipes are "goods" within the meaning of Cal. Civ. Code § 1761(a).

57.    Defendant's unfair and deceptive business practices, as alleged above and herein,

were intended to and did result in the sale of DUDE Wipes.

58.    As a direct and proximate result of Defendant's unfair and deceptive business

practices, as alleged above and herein, Plaintiff Cobb and other Members of the California

Subclass suffered injury and damages in an amount to be determined at trial.

59.    On information and belief, Defendant's unfair and deceptive business practices, as

alleged above and herein, were willful, wanton, and fraudulent.

60.    On information and belief, Defendant's officers, directors, and/or managing

agents authorized the use of the false and misleading statements and material omissions

regarding the "flushability" of DUDE Wipes, as alleged above and herein.

61.    On January 25, 2021, prior to the filing of this Complaint, Plaintiffs' counsel sent

Defendant a CLRA notice letter, which complies in all respects with California Civil Code

§1782(a).  The letter also provided notice of breach of express and implied warranties.  The letter

was sent via certified mail, return receipt requested, advising Defendant that it was in violation

of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter stated that it was sent on behalf of Plaintiffs and all other similarly situated purchasers.

62. Plaintiff Cobb and the California Subclass Members seek damages and to enjoin the unlawful acts and practices described herein.

**COUNT II**
**Violation Of New York's Gen. Bus. Law § 349**
**(On Behalf Of The New York Subclass)**

63. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

64. Plaintiffs Arlene Wyant and Cheryl Rutkowski bring this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

65. Defendant committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the "flushability" of its DUDE Wipes to mislead consumers into believing the DUDE Wipes are flushable.

66. Plaintiffs Wyant and Rutkowski have standing to pursue this claim because they has suffered an injury-in-fact and have lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiffs Wyant and Rutkowski purchased DUDE Wipes for their own personal use. In doing so, Plaintiffs Wyant and Rutkowski relied upon Defendant's false, misleading, and deceptive representations that DUDE Wipes were flushable. Plaintiffs Wyant and Rutkowski spent money in the transaction that they otherwise would not have spent had they known the truth about Defendant's advertising claims.

67. Defendant's deceptive acts and practices were directed at consumers.

68. Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations. Defendant knew consumers would purchase

DUDE Wipes and/or pay more for them under the false – but reasonable – belief that DUDE Wipes are flushable, when they are not. By advertising so prominently that DUDE Wipes were flushable, Defendant proves that information about "flushability" is material to consumers. If such information were not material, Defendant would not feature it prominently on the front label of every DUDE Wipes package. As a result of its deceptive acts and practices, Defendant has sold thousands, if not millions, of DUDE Wipes to unsuspecting consumers across New York. If Defendant had advertised its DUDE Wipes truthfully and in a non-misleading fashion, Plaintiffs and other New York Subclass Members would not have purchased them or would not have paid as much as they did for them.

69.    As a direct and proximate result of Defendant's false, misleading, and deceptive representations and/or omissions, Plaintiffs Wyant and Rutkowksi and other Members of the New York Subclass were injured in that they: (1) paid money for DUDE Wipes that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the DUDE Wipes they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the DUDE Wipes they purchased had less value than Defendant represented.

70.    On behalf of themselves and Members of the New York Subclass, Plaintiffs Wyant and Rutkowski seek to enjoin Defendant's unlawful acts and practices and recover their actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
### Violation Of New York's Gen. Bus. Law § 350
### (On Behalf Of The New York Subclass)

71.    Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

72.     Plaintiffs Arlene Wyant and Cheryl Rutkowski bring this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

73.     Defendant engaged in a campaign of false advertising with regard to the "flushability" of DUDE Wipes to mislead consumers into believing the DUDE Wipes they purchase are "flushable."

74.     Plaintiffs Wyant and Rutkowski have standing to pursue this claim because they have suffered an injury-in-fact and have lost money or property as a result of Defendant's deceptive acts and practices.  Specifically, Plaintiffs Wyant and Rutkowski purchased DUDE Wipes for their own personal use.  In doing so, Plaintiffs Wyant and Rutowski relied upon Defendant's false, misleading, and deceptive representations that DUDE Wipes would be flushable when they are not.  Plaintiffs Wyant and Rutkowski spent money in the transaction that they otherwise would not have spent had they known the truth about Defendant's advertising claims.

75.     Defendant's deceptive acts and practices were directed at consumers.

76.     Defendant's deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations.  If Defendant had advertised its DUDE WIPES truthfully and in a non-misleading fashion, Plaintiffs and other New York Subclass Members would not have purchased the DUDE Wipes or would not have paid as much as they did for them.

77. As a direct and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Plaintiffs Wyant and Rutkowski and other Members of the New York Subclass were injured in that they: (1) paid money for DUDE wipes that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the DUDE Wipes they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the DUDE WIPES they purchased had less value than Defendant represented.

78. On behalf of themselves and Members of the New York Subclass, Plaintiffs Wyant and Rutkowski seek to enjoin Defendant's unlawful acts and practices and recover their actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT IV**
**Breach Of Express Warranty**
**(On Behalf Of The Class, The California Subclass,**
**The New York Subclass, And The Illinois Subclass)**

79. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

80. Plaintiffs bring this claim individually and on behalf of the Members of the proposed Class and Subclasses against Defendant.

81. As the designer, manufacturer, marketer, distributor, and/or seller of DUDE Wipes, Defendant issued an express warranty by representing to consumers at the point of purchase that DUDE Wipes were flushable. Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiffs and Members of the Class and Subclasses.

82.     In fact, the DUDE Wipes do not conform to Defendant's representations about "flushability" because DUDE Wipes are not, in fact flushable.  By falsely representing the DUDE WIPES in this way, Defendant breached express warranties.

83.     As a direct and proximate result of Defendant's breach, Plaintiffs and Members of the Class and Subclasses were injured because they: (1) paid money for DUDE Wipes that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the DUDE Wipes they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the DUDE Wipes they purchased had less value than Defendant represented.  Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiffs and Class and Subclass Members would not have purchased the DUDE Wipes or would not have paid as much as they did for them.

### COUNT V
### Violation Of Illinois Consumer Fraud Act, §§ 815 ILCS 505/1, *et seq*
### (On Behalf Of The Class And The Illinois Subclass)

84.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

85.     Plaintiff Darnall brings this claim individually and on behalf of Members of the Class and the Illinois Subclass against Defendant.

86.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), §§ 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce.  The ICFA is to be liberally construed to effectuate its purpose.

87.     Defendant intended that Plaintiff Darnall and each of the other members of the Class and Illinois Subclass would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

25

88.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff Darnall and each of the other members of the Class and Illinois Subclass have sustained damages in an amount to be proven at trial.

89.     In addition, Defendant's conduct showed malice, motive, and reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT VI
### Violation of State Consumer Fraud Acts
### (On Behalf Of The Consumer Fraud Multi-State Subclass)

90.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

91.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Consumer Fraud Multi-State Subclass.

92.     The Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Subclass[16] prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

93.     Defendant intended that Plaintiffs and each of the other members of the Consumer Fraud Multi-State Subclass would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

94.     As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other members of the Consumer Fraud Multi-State Subclass have sustained damages in an amount to be proven at trial.

---

[16] California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. §407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349, 350 *et seq.*); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

95.    In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seek judgment against Defendant as follows:

a.  Certifying the nationwide Class, the New York Subclass, the California Subclass, the Illinois Subclass, and the Consumer Fraud Multi-State Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and respective Subclasses and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass Members;

b.  Declaring that Defendant's conduct violates the statutes referenced herein;

c.  Finding in favor of Plaintiffs, the nationwide Class, the New York Subclass, and the California Subclass, the Illinois Subclass, and the Consumer Fraud Multi-State Subclass against Defendant on all counts asserted herein;

d.  Awarding Plaintiffs and Class and Subclass Members their costs and expenses incurred in the action, including reasonable attorneys' fees;

e.  Ordering Defendant to pay pre-judgment interest on all amounts awarded;

f.  Providing such further relief as may be just and proper.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: March 21, 2023

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____/s/ Frederick J. Klorczyk III_____
                Frederick J. Klorczyk III

Frederick J. Klorczyk III*
888 Seventh Ave, 3rd Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
Email: fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant*
Brittany S. Scott*
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel: (925) 300-4455
Fax: (925) 407-2700
Email: ndeckant@bursor.com
        bscott@bursor.com

**MILBERG COLEMAN BRYSON**
**PHILLIPS & GROSSMAN PLLC**
Nick Suciu III*
6905 Telegraph Rd., Ste 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
Email: nsuciu@milberg.com

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
(847) 208-4585
Email: gklinger@milberg.com

**WOLF HALDENSTEIN ADLER**
**FREEMAN**
**& HERZ, LLC**
Carl V. Malmstrom (State Bar No. 6295219)
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000

E

-Mail: malmstrom@whafh.com

*Generally Admitted*

        *Attorneys for Plaintiffs*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Frederick J. Klorczyk III declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiffs in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of Illinois.

I declare under the penalty of perjury under the laws of the State of Connecticut  and the United States that the foregoing is true and correct and that this declaration was executed at Darien, Connecticut this 21st day of March, 2023.

*/s/ Frederick J. Klorczyk III*
Frederick J. Klorczyk III
